IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.   10-cv-02240-WYD-MJW

PATRICK KENNEDY,

    Plaintiff,

v.

COLORADO RS, LLC, a Delaware corporation, d/b/a "RIVERSTONE RESIDENTIAL GROUP SW"; and

CAS PARTNERS, LLC, a Texas corporation,

    Defendants.

---

**ORDER**

---

I.    <u>INTRODUCTION</u>

Plaintiff filed his First Amended Complaint and Jury Demand ("Complaint") [ECF No. 53], on July 14, 2011. Plaintiff brings four claims for relief against his former employer: (1) Unfair Labor Standards; (2) Wrongful Termination in Violation of Public Policy; (3) Violation of the Americans with Disabilities Act as amended in 2009 (ADA); and, (4) Violation of the Employment Retirement Income Security Act (ERISA). This matter is before the Court on Defendant's Partial Rule 12(b)(6) Motion to Dismiss the Second and Fourth Causes of Action in Plaintiff's Amended Complaint [ECF No. 56], filed July 28, 2011. Plaintiff filed his Response [ECF No. 63] on September 6, 2011, and Defendant filed its Reply [ECF No. 68] on September 22, 2011.

## II.     BACKGROUND

This case arises from the events surrounding the termination of Plaintiff Patrick Kennedy by Defendant Riverstone Operating Company, Inc., ("Riverstone") [1] on February 10, 2010. (Compl., ¶ 7.)  The Complaint alleges that Mr. Kennedy was a maintenance employee at Riverstone's Clear Creek Commons ("CCC") property, an independent living facility for elderly residents.  (*Id.*, ¶ 5.)  During the course of his employment, Mr. Kennedy's supervisor was Kathleen Trujillo.  (*Id.*, ¶ 9.)  Beginning in 2008, Mr. Kennedy began raising concerns to Trujillo about lax security around the office. (*Id.*)  He was particularly concerned by the fact that the resident's confidential files containing personal and financial information were stored in an unlocked room. (*Id.*)  Mr. Kennedy also alleges that throughout his employment he was frequently required to work through his lunch break and that he was required to work during holidays to assist with events for the residents.  (*Id.*, ¶ 10.)

In October 2009, Mr. Kennedy was diagnosed with diverticulitis and potentially cancerous polyps.  (*Id.*, ¶ 11.)  He underwent surgery in December 2009 to remove part of his colon.  (*Id.*, ¶ 13.)  In anticipation of his medical leave, Mr. Kennedy requested short-term disability benefits from Riverstone.  (*Id.*, ¶ 13).  Mr. Kennedy claims that Riverstone received a request for more information from the disability carrier regarding his request in early January 2010.  (*Id.*)  Mr. Kennedy returned to work on January,11 2010, and submitted a physician-mandated work restriction that prohibited him from lifting more than 15 pounds.  (*Id.*, ¶14).

---

[1] Defendant states that it has been incorrectly named as "Colorado RS, LLC" and "CAS Partners, LLC" in the case caption.  This Order will accordingly refer to Defendant as "Riverstone."

On January 21, 2010 the residents' personal files were stolen from an unlocked room and cabinet at CCC. (*Id.*, ¶ 15). Mr. Kennedy alleges that his supervisor Trujillo instructed him to lie to the police by telling them the files were locked up. (*Id.*, ¶ 16-17). Mr. Kennedy refused and Trujillo sent him home, stating that he was putting himself against the company. (*Id.*, ¶ 19-20.) Rather than inform residents individually about the theft, Riverstone placed a note on the front desk explaining the files had been stolen. (*Id.*, ¶ 22-24.)

The day after the theft, Mr. Kennedy alleges Trujillo assigned him tasks that violated his work restrictions including moving a washer and dryer, cleaning the entire residential grounds and storage units, painting an apartment, and replacing a toilet. (*Id.*, ¶ 29-30). He also alleges Trujillo created a new policy, requiring him to account for every moment of his work time, which none of the other employees were required to follow. (*Id.*, ¶ 32.) On January 26, 2010, Riverside held a meeting where all employees, including Mr. Kennedy, were threatened with termination if they discussed the stolen files. (*Id.*, ¶ 37.) Mr. Kennedy claims that on February 2, 2010 he was asked but refused to sign a document he presumed to be disciplinary in nature. (*Id.*, ¶ 39.)

Mr. Kennedy claims that on February 1, 2010 he received a letter from the disability carrier rejecting his application for short-term disability benefits because Riverside had not completed the necessary paperwork. (*Id.*, ¶ 40.) On February 10, 2010 Mr. Kennedy was terminated for "fraternization with residents" because he had shared information about the files. (*Id.*, ¶ 41.) Mr. Kennedy claims this was a pretext and that he was actually terminated for refusing to lie to the police. (*Id.*, ¶ 42.)

### III.     ANALYSIS

#### A. Standard of Review

The Federal Rules of Civil Procedure provide that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted). "A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If the allegations state a plausible claim for relief, the claim survives the motion to dismiss. *Id.* at 1950.

#### B. Whether Dismissal is Appropriate as to Kennedy's Second Claim For Wrongful Discharge

Riverstone asserts that no wrongful discharge claim may lie where the statute on which the claim is premised provides a remedy for wrongful discharge. Riverstone argues that because the ADA and the Colorado Anti-Discrimination Act ("CADA")

provide a full measure of remedies, Kennedy may not bring a wrongful discrimination claim based on either statute.[2]

Riverstone directs me to a line of cases holding that under Colorado law no wrongful discharge claim may lie where the statute on which the claim is premised provides a remedy. *Gamble v. Levitz Furniture Co. of the Midwest, Inc.*, 759 P.2d 761, 766 (Colo. App. 1988) (holding that public policy claims are unavailable where "the statute in question provides the employee with a wrongful discharge remedy"); *Caspar v. Lucent Techs., Inc.*, 280 F. Supp. 2d 1246, 1249 (D. Colo. 2003) (holding that a wrongful discharge claim is not available given the availability of Title VII remedies); *Krauss v. Catholic Health Initiatives Mountain Region*, 66 P.3d 195, 203 (Colo. App. 2003) (stating that employee could not base wrongful discharge claim on the Family Medical Leave Act because the Act provides its own remedies for retaliatory discharge); *Hein v. AT&T Operations, Inc.*, No. 09-cv-00291-WYD-CBS, 2010 WL 5313526, at *6 (D. Colo. Dec. 17, 2010) (noting that "[u]nder Colorado law, even if a public policy exception is appropriate, it is not available when the statute in question provides a remedy for retaliatory discharge," and dismissing a wrongful discharge claim because the Sarbanes-Oxley Act provided its own remedy for retaliatory discharge).

In response, Mr. Kennedy argues that *Brooke v. Restaurant Services, Inc.*, 906 P.2d 66 (Colo. 1995), supports a finding that wrongful discharge claims premised on the CADA are *not* barred. In *Brooke*, the Colorado Supreme Court held that the CADA is not the exclusive remedy for employment-related sex discrimination. *Id.* at 67. The *Brooke* court began its analysis by stating the general rule that federal and state

---

[2] Riverstone argues that Kennedy's second claim should be dismissed only to the extent it is based on the ADA and the CADA. Kennedy also bases his second claim on Colo. Rev. Stat. §§ 18-8-101 to 116.

-5-

remedies for civil rights violations are cumulative, not exclusive. *Id.* at 68. If the legislature wishes to bar preexisting common law rights with the creation of a statutory private right of action, "it must manifest its intent either expressly or by clear implication." *Id.* The court reasoned that because the CADA offers less than a comprehensive remedial scheme, such intent could not be found in the Act. *Id.* at 69-70. Specifically, the CADA provides no redress to an employee for discriminatory conduct that does not result in an employment-related decision, and damages are not available under the Act. *Id.* at 69. Moreover, remedies under the CADA "are only incidental to the Act's primary purpose of eradicating discriminatory practices by employers," and "the duties of the [Colorado Civil Rights Commission], in addition to enforcing the compulsory provisions of the Act, are geared toward eliminating discriminatory practices on a broad scale rather than addressing the harm such practices cause on a case-by-case basis." *Id.* The *Brooke* court concluded by noting that its analysis is applicable to all other forms of prohibited discrimination, including discrimination based on handicap. *Id.* at 70 n.4.

        1. <u>The CADA</u>

I agree with Kennedy that a wrongful discharge claim premised on the CADA may lie. As I have previously found, the *Brooke* court "clearly addressed whether CADA may form the basis for a claim of wrongful discharge in violation of public policy, holding that it may." *Bronikowski v. Dish Commc'ns*, No. 01-D-0457, at 4 (D. Colo. Sep. 12, 2001) (unpublished order); *see also Van DeWege v. Storage Tech. Corp.*, No. 97-B-1599 (D. Colo. Oct. 8, 1998) (unpublished order) (in light of *Brooke*, denying motion to dismiss wrongful discharge claim premised on the CADA). Thus while *Gamble* and its

progeny state the general rule that wrongful discharge claims are unavailable when premised on a statute that provides a remedy, *Brooke* states that wrongful discharge claims premised on the CADA are an exception to the general rule. *See* 906 P.2d at 70.

Riverstone contends that reliance on *Brooke* is misplaced because the decision did not address the tort of wrongful discharge. I reject this contention. The first holding of *Brooke*—that the CADA does not provide the exclusive remedy for employment-related discrimination—plainly states that other remedies, and thus presumably wrongful discharge claims, are available. *See* 906 P.2d at 70 n.4; *see also* 1B West's Colorado Practice Series § 19:18 (2011) ("Statutes providing a wrongful discharge remedy for proscribed conduct may preempt common law claims based on the same facts but only if the legislature clearly expressed its intent to do so[,]" citing *Brooke*); 7 West's Colorado Practice Series § 26:16 ("The [CADA] does not, however, provide an exclusive remedy for gender discrimination claims, and . . . any common-law claim may be filed in the district court at any time during the [administrative] process[,]" citing *Brooke*). Moreover, the reasoning of *Brooke* applies equally well to the issue of whether the CADA precludes wrongful discharge claims, particularly because the CADA does not allow a plaintiff to recover damages. *See* 906 P.2d at 68-70 (citing C.R.S. § 24-34-405).

Riverstone also contends that the 2007 decision of *Crow v. Penrose-St. Francis Healthcare System*, 169 P.3d 158, 168 (Colo. 2007), indicates that *Brooke* would have been decided differently had a CADA-based wrongful discharge claim been at issue. I disagree. The *Crow* decision is inapposite because it dealt with ripeness and examined

the second holding of *Brooke*—that the CADA requires exhaustion of administrative remedies only before filing claims pursuant to the Act—not the first holding, which is relevant to this case.  *See id.*  Accordingly, I find no reason to conclude that *Crow* in some way limited the first holding of *Brooke*.

Riverstone also directs my attention to *Endahl v. Vinnell Corp.*, No. 04-CV-00426-MSK-PAC, 2006 WL 57496, at *10 (D. Colo. Jan. 10, 2006), where Judge Krieger found that the tort of wrongful discharge is barred when premised on the CADA because the Act establishes a remedy for such prohibited discrimination.  This finding was based on the *Gamble* line of cases.  *Id.*  However, *Endahl* did not address *Brooke* at all, and I have previously found that "the *Brooke* case's holding is directly contrary to *Gamble*[.]"  *Bronikowski*, No. 01-D-0457 at 4.  My prior reliance and interpretation of *Brooke* in *Bronikowski* applies with equal force today.

Riverstone further argues that the rationale underlying the tort of wrongful discharge is incompatible with the assertion of CADA rights under the guise of wrongful discharge.  The *Caspar* court noted that "the concept of a wrongful discharge evolved as an exception to the at-will employment doctrine and is designed to provide a remedy for unlawful adverse employment actions where no cause of action for breach of contract would lie."  280 F. Supp. 2d at 1249.  Riverstone thus contends that because the CADA contains remedy provisions, the tort of wrongful discharge no longer serves any purpose.  Yet this contention does not address *Brooke's* findings regarding the CADA.  The *Brooke* court found no legislative intent to abrogate common law causes of action, and the court pointed to the incompleteness of remedies (such as the unavailability of damages) under the CADA.  906 P.2d at 68-70.  Thus I find that the

purpose of wrongful discharge claims as described in *Caspar* is not eliminated when a wrongful discharge claim is premised on the CADA.

Finally, Riverstone argues that recognizing a claim of wrongful discharge premised on the CADA will encourage an end-run around the limitations within the CADA, such as the statute of limitations. I find this argument inconsistent with the reasoning and first holding of *Brooke*. *See id.* Therefore, I conclude that *Brooke* is dispositive on this issue, and therefore Mr. Kennedy's wrongful discharge claim is *not* barred to the extent it is premised on the CADA.

### 2. The ADA

I agree with Riverstone that Mr. Kennedy's wrongful discharge claim *is* barred to the extent it is premised on the ADA. Mr. Kennedy did not address this issue in his Response so I conclude that Mr. Kennedy confesses Riverstone's argument regarding the ADA. In addition, a review of the issue reveals that Riverstone's argument has merit. Unlike with the CADA where the Colorado Supreme Court has ruled that non-CADA remedies are available for discrimination claims, I know of no comparable authority regarding non-ADA remedies. Moreover, the comprehensiveness of the ADA stands in contrast to that of the CADA. An enumerated purpose of the ADA is to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities[.]" 42 U.S.C. § 12101(b)(1). Remedies available under the ADA include the recovery of compensatory and punitive damages, 42 U.S.C. § 1981a(a)(2), as well as recovery of back pay for up to two years preceding the filing of a charge. 42 U.S.C. § 2000e-5(e)(3)(B). Accordingly, because the ADA has statutory remedies for wrongful discharge and because I know of no

authority comparable to *Brooke*, Kennedy's wrongful discharge claim is barred to the extent it is premised on the ADA. *See Gamble*, 759 P.2d at 766.

  B. <u>Whether Dismissal is Appropriate as to Kennedy's Fourth Claim for Violation of ERISA</u>

Riverstone contends that Kennedy's ERISA 510 claim is barred by the sixth-month statute of limitations set forth in Colo. Rev. Stat. § 24-34-403. Riverstone argues that the Tenth Circuit's decision in *Held v. Manufacturers Hanover Leasing Corp.*, 912 F.2d 1197, 1204-05 (10th Cir. 1990), mandates that I apply the state law limitations period applicable to Colorado employment discrimination claims, and Riverstone asserts that § 24-34-403 is the only limitations period applicable to such claims.

*Held* is the leading case on determining which limitations period applies to ERISA 510 actions. In *Held*, the Tenth Circuit began its analysis by noting the general rule that where a federal statute does not state a limitations period, statutes of limitations are to be borrowed from state law. 912 F.2d at 1200. Finding that section 510 of ERISA gave rise to the possibility of declaratory and injunctive relief under 29 U.S.C. § 1132, the court concluded that "the most analogous claim for relief under New York law is a claim for employment discrimination[.]"[3] *Id.* at 1205 (quotations and citation omitted).

Assuming that *Held* mandates that I use a statute of limitations applicable to employment discrimination, I disagree that Colo. Rev. Stat. § 24-34-403 provides the

---

[3] Before reaching this conclusion, the *Held* court found that appellant had two distinct causes of action: an action for violation of § 510 seeking declaratory and injunctive relief, and "a civil action to 'recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.'" *Id.* at 1203 (quoting 29 U.S.C. § 1132(a)(1)(B)). The court held that this second cause of action is most analogous to a state-law action upon a contract, and therefore applied a different statute of limitations to the second cause of action. *Id.* at 1207. Because I conclude that Kennedy's ERISA 510 action is not barred by a limitations period, I find it unnecessary to parse his First Amended Complaint to determine whether he has asserted a cause of action under 29 U.S.C. § 1132(a)(1)(B).

limitations period applicable to all employment discrimination claims in Colorado. Section 24-34-403 states, "Any charge alleging a violation of this part 4 [the CADA] shall be filed with the commission . . . within six months after the alleged discriminatory or unfair employment practice occurred, and if not so filed, it shall be barred." Colo. Rev. Stat. § 24-34-403 (2008). By its very terms, section 24-34-403 applies only to administrative actions filed with the Colorado Civil Rights Commission ("CCRC"), and the Colorado Supreme Court has made clear that the CADA is not the exclusive remedy for employment-related discrimination. *Brooke*, 906 P.2d at 67. Accordingly, the statute of limitations for filing non-administrative employment discrimination claims is not governed by § 24-34-403. *See id.* Such claims would instead fall under the two-year limitations period found in Colo. Rev. Stat. § 13-80-102, which covers tort actions as well as "[a]ll other actions of every kind for which no other period of limitation is provided[.]" *See* Colo. Rev. Stat. § 13-80-102(1)(a), (i) (2005). For example, the Colorado Court of Appeals overruled a trial court decision applying the six-month limitations period from § 24-34-403 to a claim brought court pursuant to § 24-34-402.5 of the CADA.[4] *Galvan v. Spanish Peaks Reg'l Health Ctr.*, 98 P.3d 949, 950-51 (Colo. App. 2004). The *Galvan* court concluded that "the six-month limitation period set forth in § 24-34-403 applies only to claims filed with the [CCRC]," and therefore the court held that the claim at issue "is governed by the two-year statute of limitations set forth in § 13-80-102[.]" *Id.* at 951. Thus, like in *Galvan*, I find that the two-year limitations period established in § 13-80-102 would apply to a Colorado employment discrimination claim that is not brought to the CCRC.

---

[4] Unlike the majority of claims brought under the CADA, a § 24-34-402.5 claim can be pursued only by filing a suit for damages in Colorado state district court. Colo. Rev. Stat. § 24-34-402.5(2)(a).

Further, I find *Murphy v. American Home Products Corp.*, 448 N.E.2d 86 (N.Y. 1983), instructive in determining the proper limitations period for employment discrimination claims in Colorado. *Murphy* was the only case the *Held* court cited when it concluded that under New York Law employment discrimination is the most analogous claim to ERISA 510 actions. *Held*, 912 F.2d at 1205. In *Murphy*, the trial court had looked to New York's Human Rights Law—which is similar to the CADA, *see* N.Y. Exec. § 290-301—for a limitations period to apply to an employment discrimination claim filed in state court, thus choosing the one-year statute of limitations applicable to complaints filed with New York's Division of Human Rights. 448 N.E.2d at 92. Overturning the lower court, the Court of Appeals found that "there are persuasive reasons why provision should be made for different periods of time within which claims for unlawful discrimination may be made—one for administrative relief, the other for judicial remedy." *Id.* Noting the radical difference of perspective between administrative intervention and judicial adjudication, the court ruled that employment discrimination claims filed in court are "governed by the three-year period of limitations… applicable to 'an action to recover upon a *liability,* penalty or forfeiture created or imposed by statute[.]'" *Id.* at 93 (quoting N.Y. C.P.L.R. 214 (McKinney 2003)).[5] Accordingly, as in *Murphy*, I find that the administrative limitations period found in the CADA does not apply to employment discrimination claims that are *not* brought before the CCRC.

Additionally, the Tenth Circuit has indicated that claims for wrongful discharge are the most appropriate analogue to ERISA 510 actions. *See Myers v. Colgate*

---

[5] N.Y. Exec. § 297(9) ("Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages"). That New York's Human Rights Law expressly allows aggrieved parties to sue for damages in court and the CADA generally does not[5] is immaterial to my analysis, for the CADA is not the exclusive remedy for discrimination claims in Colorado. *See Brooke*, 906 P.2d at 70.

*Palmolive Co.*, 26 F. App'x 855, 864 (10th Cir. 2002) (holding that under Kansas law a wrongful discharge claim is the most appropriate analogue to ERISA 510 claims and applying a two-year limitations period); *Woods v. Halliburton Co.*, 49 F. App'x 827, 829 (10th Cir. 2002) (finding that retaliatory discharge, as a variant of employment discrimination, could serve as an analogue to ERISA 510 claims). Many other courts agree that wrongful discharge claims are most analogous to ERISA 510 actions. *See, e.g.*, *Hinton v. Pac. Enters.*, 5 F.3d 391, 394 (9th Cir. 1993) (applying California's statute of limitations for wrongful termination); *Byrd v. MacPapers, Inc.*, 961 F.2d 157, 159 (11th Cir. 1992) (finding that action for discharge in retaliation for filing workers' compensation claim is best analogue); *Teumer v. Gen. Motors Corp.*, 34 F.3d 542, 549-50 (7th Cir. 1994) (applying statute of limitations for retaliatory discharge actions); *Myers v. Colgate Palmolive Co.*, 102 F. Supp. 2d 1208, 1225 (D. Kan. 2000) (finding wrongful discharge to be the most appropriate analogue in Kansas law).

In light of these cases, I find wrongful discharge to be the most appropriate analogue to ERISA 510 claims. *See Myers*, 26 F. App'x at 864; *Woods*, 49 F. App'x at 829; *see also Hinton*, 5 F.3d at 394. Wrongful discharge in Colorado is characterized as a tort. *See Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 115 (Colo. 1992) (applying statute of limitations for tort claims to wrongful discharge claim); *see also Woods*, 29 F. App'x at 829 (noting that retaliatory discharge is characterized as a civil tort under Oklahoma law). As a tort, these claims are subject to the two-year limitations period found in Colo. Rev. Stat. § 13-80-102(1)(a). Therefore, a two-year limitations period is appropriate for Mr. Kennedy's ERISA 510 claim.

Mr. Kennedy was terminated on February 10, 2010, and he raised his ERISA 510 claim on February 14, 2011, well within the two-year period set forth in Colo. Rev. Stat. § 13-80-102. Accordingly, I find that Riverstone's Motion should be denied as to Kennedy's ERISA 510 claim.

IV. CONCLUSION

Based on the foregoing, it is

ORDERED that Defendant's Partial Rule 12(b)(6) Motion to Dismiss the Second and Fourth Causes of Action in Plaintiff's Amended Complaint is **GRANTED IN PART AND DENIED IN PART**. It is **GRANTED** to the extent that Plaintiff's Second Cause of Action (wrongful termination in violation of public policy) is premised on the ADA, and it is **DENIED** as to all other claims.

Dated: February 1, 2012

BY THE COURT:

s/ Wiley Y. Daniel
WILEY Y. DANIEL,
CHIEF UNITED STATES DISTRICT JUDGE